IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMYRA BROWN,
          Plaintiff,

                                 1:11-cv-06277-PK

                                 OPINION AND ORDER

v.


MICHAEL J. ASTRUE,
Commissioner of Social Security,
          Defendant.
_____

PAPAK, Magistrate Judge:

      Plaintiff Tamyra Brown challenges the Commissioner's decision denying her application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. The Commissioner concedes that the Administrative Law Judge (ALJ) erred in evaluating the medical evidence, and moves to remand for further proceedings. (#21.)  Brown asks the Court to reverse and remand for an award of benefits, rather than for further proceedings.  The Court has jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth below, this case is remanded for an award of benefits.

Page 1- OPINION AND ORDER

## BACKGROUND

Brown applied for SSI and DIB on March 4, 2008, alleging disability as of April 1, 2003 due to "[f]ibromyalgia, back and neck problems, migraines, depression, thyroid, high cholesterol, restless leg, [and] acid reflux." Tr. 106-111, 137.  Brown was born in 1960, possesses a high school education, and worked as a hairdresser, cosmetology instructor, clerk, and babysitter.  Tr. 141,145, 235-237.  After the Commissioner denied her application initially and upon reconsideration, Brown requested a hearing before an administrative law judge (ALJ). Tr. 34-43, 47-55.  The ALJ held a hearing on March 11, 2010, taking testimony from Brown, agency consulting medical expert Howard McClure, Jr., M.D., agency consulting psychological expert Susan Pelzer, Ph.D., and a vocational expert.  Tr. 617-640.  On April 27, 2010, the ALJ issued a decision finding Brown not disabled.  Tr. 13-21.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. Tr. 13-21.  The ALJ found that Brown's date last insured was June 30, 2009. Tr. 15.  At step one, the ALJ found that Brown had not engaged in substantial gainful activity during the period from her alleged onset date of April 1, 2003, through the date of the hearing.  *Id.*  At step two, the ALJ found that Brown had the following severe impairments: "lumbar spine degenerative disc disease with chronic low back pain and left leg radiculopathy, chronic neck pain, osteoarthritis, and obesity . . . ." *Id.*  At step three, the ALJ found that Brown's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. Tr. 15-17.  The ALJ found that Brown had the residual functional capacity to perform the full range of sedentary work. Tr. 17.  Because of her body habitus, Brown was precluded from climbing ladders, ropes, or scaffolds and working at heights

or with dangerous machinery. *Id.* In consideration of her alleged mental impairments, the ALJ

found Brown had mild to moderate restrictions in activities of daily living, mild difficulties in

social functioning, and mild difficulties in maintaining concentration, persistence, or pace. *Id.*

At step four, the ALJ found that Brown could not perform her past relevant work as a hairdresser

or cosmetology instructor. Tr. 19. The ALJ concluded at step five that Brown could perform

jobs that exist in significant numbers in the national economy, and accordingly concluded that

she was not disabled. Tr. 20-21.

The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the

Commissioner's final decision. Tr. 6-9. Brown then filed this action on September 6, 2011.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh

all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez*

*v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational

interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d

1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an

agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc.*

*Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not

reverse an ALJ's decision for harmless error, which exists when it is clear from the record that

the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*,

533 F.3d at 1038 (citation omitted).

## DISCUSSION

Brown argues that the ALJ improperly rejected her testimony and the testimony of Dr.

Evan Merrill, Brown's treating podiatrist, and the testimony of Carla Morey, Brown's treating

physician's assistant. As a result, Brown argues that the ALJ improperly relied on VE testimony

that did not consider all of Brown's functional limitations. The Commissioner concedes that the

ALJ erred in failing to discuss Dr. Merrill's medical opinion, but argues that further proceedings

are appropriate to address that opinion. The Commissioner also implicitly concedes that the ALJ

never addressed Morey's opinion, but nevertheless suggests that remand is appropriate to allow

the ALJ to address the opinion of a different medical provider, Mark Greenberg, M.D., who

observed that Brown had 18 out of 18 tender points in a 2003 fibromyalgia screen. Finally, the

Commissioner argues that the ALJ properly found Brown's testimony not credible because it

conflicted with testimony of agency expert Dr. McClure and Brown's reports of her daily

activities, including babysitting grandchildren, walking them to school, cooking, maintaining a

household, and gardening/yard work. The only question now before this court is whether to

remand for further proceedings or for immediate payment of benefits.

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

2000). The Ninth Circuit sets forth the following standard for determining whether to remand

for an award of benefits: "the district court should credit evidence that was rejected during the

Page 4- OPINION AND ORDER

administrative process and remand for an immediate award of benefits if (1) the ALJ failed to

provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues

that must be resolved before a determination of disability can be made; and (3) it is clear from

the record that the ALJ would be required to find the claimant disabled were such evidence

credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel*, 211

F.3d 1172, 1174, 1178 (9th Cir. 2000)). "The required analysis centers on what the record

evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r of the*

*Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

I.    **Failure to Provide Legally Sufficient Reason for Rejecting Evidence**

I find that the ALJ failed to provide legally sufficient justifications for rejecting the

opinion of Dr. Merrill and Carla Morey, as well as Brown's own testimony.

II.   **Dr. Merrill**

Here, the Commissioner concedes that the ALJ improperly rejected the opinion of Dr.

Merrill. Nevertheless, I briefly review his opinion as it pertains to Brown's functional

limitations. Dr. Merrill, a licensed podiatrist in Oregon, is considered an acceptable medical

source for the purpose of establishing impairments of the foot and ankle. *See* 20 C.F.R. §

404.1513(4), 416.913(4); Or. Rev. Stat. § 677.010(14). Dr. Merrill treated Brown for chronic

tendonitis in her right foot, starting in April 2009. Tr. 552-553, 614. MRI results showed Brown

suffered a partial tear and tendonitis in the right peroneal tendons. Tr. 615. In February 2010,

Dr. Merrill completed a questionnaire provided by Brown's counsel. Tr. 614-616. Dr. Merrill

indicated that Brown's tendonitis caused her pain, weakness, and instability in the right lateral

foot/ankle. Tr. 614. Because of those symptoms, Dr. Merrill opined that Brown could stand and

walk only less than two hours in an eight hour workday, could sit with normal breaks for a total

of about six hours in an 8-hour workday, and would be prevented from completing a regular

workday more than two days per month because of her condition. Tr. 616.

### A. Physician Assistant Morey

The Commissioner does not dispute that the ALJ did not address Morey's opinion at all

in his decision. Morey was Brown's primary medical provider, treating her for depression,

headaches, back pain, fibromyalgia, and other issues since 2000. Tr. 270 - 464, 555- 613. In a

questionnaire completed in April 2009, Morey stated that Brown suffered from fibromyalgia and

chronic lumbar radiculopathy (back pain). Tr. 533. In a medical evaluation dated January 25,

2010, Morey wrote that Brown's lumbar MRI showed compression of the left L5 nerve root,

severely stenotic at L5-S1 and mild narrowing of the right L5-S neural foramen. Tr. 537. Morey

opined that Brown could sit for a maximum of 30 minutes at a time due to increased pain, could

stand and walk a total of less than two hours in an eight hour workday, and could sit with normal

breaks for a total of less than six hours in an eight hour workday. Tr. 537-538.

Physician assistants like Morey are considered to be "other sources" under the regulations

and Social Security Rulings, as opposed to "acceptable medical sources" that reflect judgments

about the nature and severity of a claimant's impairments. 20 C.F.R. § 404.1513(a), (d); S.S.R.

No. 06-03p, *available at* 2006 WL 2329939, at *2. Nevertheless, an ALJ must consider all

relevant evidence, including opinions of "other sources." S.S.R. No. 06-03p at *2, *6. Indeed,

opinions from "other sources" are "important and should be evaluated on key issues such as

impairment severity and functional effects, along with the other relevant evidence in the file." *Id.*

at *3. Information from "other sources" cannot establish the existence of a medically

determinable impairment, but it "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Moreover, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

Here, the ALJ completely failed to mention Brown's long-standing treatment by Morey, or Morey's opinion that Brown's pain prevented her from standing and walking two hours in a workday or sitting six hours in a workday. Brown does not contend that Morey's opinion should have been used to establish Brown's medically determinable impairments, but she does argue that Commissioner erred by failing to consider Morey's opinion altogether. For this, the Commissioner has no explanation. Instead, the Commissioner states that remand is required to evaluate the opinion of Dr. Greenberg concerning Brown's fibromyalgia diagnosis. This brief reference to Dr. Greenberg is puzzling, to say the least, since it comes in the midst of the section of the Commissioner's brief discussing Morey and is not elaborated on anywhere else. Moreover, neither Brown nor the Commissioner argue that the ALJ erred by omitting fibromyalgia from the list of Brown's severe impairments at step two, even though Dr. Greenberg found Brown tested positive for 18 out of 18 tender points in a fibromyalgia screen in January 2003. Tr. 194-195. In sum, the ALJ's failure to address Dr. Greenberg's fibromyalgia testing has no bearing on the ALJ's improper rejection of Morey's opinion concerning the severity and functional effect of Brown's impairment. *See* S.S.R. No. 06-03p at *3.

**B.  Brown**

The Commissioner also argues that the ALJ properly found Brown's testimony not credible. Brown's medical records, function reports, and hearing testimony collectively describe the progression of her back, neck, leg, and foot pain. Brown sought treatment for pain as early as 2000. Tr. 463. In 2001, she was treated for neck pain and headaches. Tr. 249. Then, in 2002, she sought treatment for back pain, which had recurred intermittently for many years. Tr. 207-208. Brown's pain worsened in 2003, apparently due to a combination of fibromyalgia, migraine headaches, long-standing depression, insomnia, and obesity. Tr. 194-196, 211-21. Brown continued to struggle with sleep in 2003 and 2004, but her heachaches improved. Tr. 214-215, 216-217. In 2005, however, Brown reported aggravated low back pain and an MRI confirmed lumbar spine radiculopathy. Tr. 209, 219, 220. After vicodin was ineffective to control her pain, she received spinal injections from a pain specialist. Tr. 224-226, 228. By 2006, Brown continued to report back pain, although it was stabilized by narcotics and muscle relaxers. Tr. 296. Over the next two years, her back pain seemed to worsen and by February 2008 she reported being unable to stand for more than 10 minutes without increased pain. Tr. 256.

In a
function report submitted in March 2008, around the time of Brown's application for Social Security benefits, Brown reported constant pain in her lower back and generally throughout her body, and right ankle pain and swelling when standing. Tr. 149. Even though Brown could not stand more than 10-15 minutes at a time, she was still able to cook, do laundry and other household chores, and take care of her grandchildren after school. Tr. 144-146. Her symptoms remained relatively stable throughout 2008 and into 2009, with constant aching from fibromyalgia, chronic back pain, aching in her ankle, and depression. Tr. 408, 577, 579. MRI

Page 8- OPINION AND ORDER

results in March 2009 confirmed the structural cause of her ankle pain– inflamation in the sheath

surrounding tendons in her right foot.  Tr. 553, 606.  Brown began seeing Dr. Merrill, a

podiatrist, who placed her in a cast boot and planned possible injections or surgery.  Tr. 552-553.

By May 2009, Dr. Merrill recommended surgery because Brown's ankle had not improved with

conservative treatments.   Tr. 548-549.  Surgery on her foot in July 2009 helped her return to full

weight bearing by September 2009, but her back pain remained problematic.   Tr. 540, 546.  In

November 2009 she received a steroid injection because of pain that could not be relieved with

medication.  Tr. 568-570.   In February 2010, Brown reported that her back pain prevented her

from standing more than 20 minutes at a time, despite taking vicodin four times a day, and

activity increased her pain level to 7-8 out of 10.  Tr. 562.

        In the hearing before the ALJ, Brown testified that her daily activities involve taking care

of the house, reading, watching TV, playing the piano a bit, and going to her grandchildren's

basketball games.  Tr. 629- 630.   Brown's husband does the grocery shopping and her daughter

usually brings dinner, so Brown does not cook very much.  *Id.*  Brown is no longer able to do

household chores every day like she used to, and she stopped gardening and doing yard work

altogether.  Tr. 630 -632. She no longer can walk her grandchildren to school.  Tr. 631.  When

she does walk, she can hardly move the next day.  *Id.*  Sitting on the bleachers during her

grandson's basketball game also hurts her back so much that the next day it's hard to move,

although watching her granddaughter's games are easier because they are shorter.  Tr. 632.

While at home, she lays down in her bed and sits in a chair during the day.  *Id.*  Although her foot

surgery improved the pain somewhat in her foot, she still remains in constant pain.  *Id.*

        In his decision, the ALJ thoroughly summarized Brown's hearing testimony, but

ultimately rejected her statements concerning the intensity, persistence, and effects of her symptoms. The Commissioner argues that the ALJ provided sufficient reasons for his adverse credibility finding because he relied on the testimony of Dr. McClure, the agency expert, who opined that the record did not demonstrate Brown's pain was "that unmanageable." Tr. 19, 622. The Commissioner also argues that the ALJ properly relied on the fact that, contrary to Brown's hearing testimony in March 2010, her function report in March 2008 indicated that she babysat her grandchildren, walked them to school, cooked and maintained her household, and did gardening and yard work. Tr. 18.

When a claimant's medical record establishes the presence of a "medically determinable impairment" that "could reasonably be expected to produce the [claimant's alleged] pain or other symptoms," the ALJ must evaluate the claimant's credibility in describing the extent of those symptoms. 20 C.F.R. § 404.1529. In weighing a claimant's credibility, the ALJ conducts a two-part analysis. In the first part, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom. *Tommasetti v. Astrue*, 533 F.3d 1035, 1939 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ moves to the second part of the analysis. There, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering *specific, clear and convincing reasons* for doing so." *Id.*, *quoting Smolen*, 80 F.3d at 1281, 1283-84 (emphasis added). In evaluating a claimant's credibility, the ALJ may consider, *inter alia*, the "claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record,

Page 10- OPINION AND ORDER

and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal modifications omitted), *citing Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997). In the event the ALJ determines that the claimant's report is not credible, such a determination must be made "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002), *citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*).

For several reasons, I find that the ALJ failed to provide clear and convincing reasons for rejecting Brown's testimony about the severity of her symptoms. First, although he recapitulated Brown's testimony, as well as testimony of other witnesses, the ALJ provided no analysis whatsoever explaining *why* he rejected Brown's subjective complaints. *See Robbins v. Soc. Security Admin.*, 466 F.3d 880, 884–885 (9th Cir. 2006) (ALJ improperly rejected claimant's testimony when he provided no "meaningful explanation" or citation to the record to support the conclusion that claimant was not credible); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). Because the ALJ provided no reasoning to support his conclusion, this court is left with the distinct impression that the ALJ "arbitrarily discredit[ed] claimant's testimony." *Thomas*, 278 F.3d at 959. This error alone is sufficient to find that the ALJ failed to provide a legally sufficient reason for rejecting Brown's testimony.

Additionally, even if the ALJ relied on an inconsistency between Brown's reports of pain and her daily activities– and it is not clear that he did– the ALJ still erred. An ALJ may look to

Page 11- OPINION AND ORDER

testimony of a claimant's daily activities to support a finding that subjective pain complaints are not credible. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 n.2 (9th Cir. 1990). If, despite her claims of pain, "a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Id., quoting Fair v. Bowen*, 885 F.2d 597, 602 -04 (9th Cir. 1989). Yet, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id; see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (citations omitted). For example, a claimant may have the capacity to travel periodically, cook meals, and wash dishes and still be prevented from working. *Fair*, 885 F.2d at 603. Thus, "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Gonzalez*, 914 F.2d at 1201.

Here, even according to the function report in March 2008, which described Brown's activity level before her symptoms deteriorated, Brown was not spending a substantial part of the day doing physical functions that could be transferred to the work setting. While she cooked and completed household chores, she had to take breaks for at least 15 minutes for every 10-15

minutes spent doing those activities.  And by the time Brown testified at her hearing two years

later, she explained that she had for the most part stopped these activities due to increased back

and foot pain.  In sum, Brown's daily activities did not properly serve to discredit her subjective

complaints of pain.

Finally, the ALJ erred to the extent he relied on Dr. McClure's testimony to discredit

Brown's complaints.  Without examining Brown, Dr. McClure opined that the record did not

indicate Brown's pain was "that unmanageable" so as to prevent sedentary work.  Tr. 622.  As an

initial matter, Dr. McClure's opinion alone cannot provide the substantial evidence necessary to

support the ALJ's decision, because it is inconsistent with the opinions of Brown's treating

providers and other evidence in the record.  *See Saelee v. Chafer*, 94 F.3d 520, 522 (9th

Cir.1996) ("The findings of a nontreating, nonexamining physician can amount to substantial

evidence, so long as other evidence in the record supports those findings.").  Further, although an

ALJ may reject excess pain testimony by making specific findings justifying that decision, the

ALJ here did not refer to Dr. McClure's testimony as the basis for rejecting Brown's testimony.

*See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986).  Finally, Dr. McClure provided no

specific justification for his conclusion that Brown's pain was not "that unmanageable," other

than his vague reference to "the record."  Tr. 622.  Dr. McClure's testimony therefore indicates

that he rejected Brown's pain complaints because they were not supported by objective medical

findings in the record.  An ALJ may not reject excess pain testimony solely on the ground that it

was not fully corroborated by objective medical findings.  *See Cotton*, 799 F.2d at 1407.  It

therefore stands to reason that an ALJ may not rely exclusively on the opinion of an agency non-

examining expert who rejects a claimant's excess pain testimony for that same impermissible

reason.

In sum, because the ALJ failed to provide legally sufficient reasons for rejecting Brown's testimony and the opinions of Dr. Merrill and Moray, the court credits that evidence as true. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (crediting as true claimant's testimony and opinions of her treating physicians before addressing second and third steps of the remand inquiry).

## III.   No Outstanding Issues

The second requirement for remand to award benefits is also satisfied here because there are no outstanding issues remaining to be addressed by the ALJ. The Commissioner suggests that the ALJ must be allowed to "address" Dr. Merrill's and Moray's opinions on remand. But he improperly ignored both those sources, and as a result, I credit them as true. Moreover, the record need not be supplemented with further vocational testimony. Based on Moray and Dr. Merrill's opinions that Brown could only stand for less than two hours a day and sit for six hours a day, Brown's counsel asked the VE to consider an individual with those limitations. Tr. 639. The VE testified that such an individual would not be able to perform Brown's past work or any work. Tr. 639-640. Additionally, the VE agreed that an individual who had to take unscheduled breaks to lay down or leave the workplace could not remain employed. Tr. 638. This limitation reflects Moray's opinion that Brown has to lie down or rest periodically during the day, and Brown's own testimony that she lays down in her bed everyday at least once during the daytime. Tr. 537, 632. Because the record, including the existing VE testimony, clearly establishes that Brown cannot perform either sedentary work or any other substantial gainful work that exists in the national economy, there is no need to remand this case to the ALJ to redetermine her residual

functional capacity or solicit addition VE testimony.   *See Benecke v. Barnhart*, 379 F.3d 587,

595 (9th Cir. 2004).

## IV.    Finding of Disability Required

Given my conclusion above that no outstanding issues exist for the ALJ, the third

requirement is also met in this case.  After crediting the testimony of Brown and opinions of Dr.

Merrill and Carla Morey, the ALJ would be required to find Brown disabled.  The

Commissioner, however, suggests that Brown may have difficulty establishing disability before

her date last insured of June 30, 2009, but does not explain why that is so.

Where the court has already determined to remand for the immediate award of benefits, it

also proper for the court to determine the onset date of disability.  *See Vertigan v. Halter*, 260

F.3d 1044, 1054 (9th Cir. 2001).  The Commissioner addresses the issue of determining

disability onset date in Social Security Ruling 83-20.  S.S.R. No. 83-20, *available at* 1983 WL

31249.  According to SSR 83–20, factors relevant to the onset of disability "include the

individual's allegation, the work history, and the medical evidence." *Id.,* 1983 WL 31249, at * 1.

While the factors are evaluated together, an individual's allegations or the date of work stoppage

"is significant in determining onset only if it is consistent with the severity of the condition(s)

shown by the medical evidence." *Id.*

Here, plaintiff alleges onset of disability on April 1, 2003, and the ALJ found that she had

not engaged in substantial gainful activity since then.  Tr. 15.  Moreover, medical evidence

supports that onset date, even though the eventual source of Brown's pain symptoms was not

identified until later.  The record shows that Brown received various treatments for back pain

since at least 2000.  By 2003, several medical providers had recognized Brown's pain symptoms and gave her various pain-related diagnoses. Tr. 207-208 (Patricia Hoyecki, FNP diagnoses chronic back pain in June 2002); Tr. 386 (Carla Morey diagnoses back pain and fibromyalgia in December 2002); Tr. 194-196 (Dr. Greenberg diagnoses fibromyalgia, depression/anxiety, and obesity in January 2003); Tr. 211-213 (Dr. Tippin diagnoses insomnia, restless leg syndrome, migraine, chronic depression, chronic pain syndrome, and obesity in July 2003).  But it was only in June 2005 that Brown underwent a lumbar MRI, which finally revealed the structural cause of her pain symptoms.  Tr. 220.  In light of the MRI results, Brown's neurologist revised her diagnosis to "L5 radiculopathy, left, secondary to foraminal stenosis" and observed that Brown "clearly has a significant back problem that requires continued treatment." *Id.* The combination of plaintiff's allegation of onset, her cessation of substantial gainful activity, and the medical evidence all support a finding of disability with an onset date of April 1, 2003.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is reversed and remanded for a finding of disability and an award of benefits.  A final judgment is entered pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this 12th day of December, 2012.

Honorable Paul Papak
United States Magistrate Judge